UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

VIRGIL GREEN,

                    Plaintiff,                            Case No. 1:10-cv-958

v.                                                         Honorable Paul L. Maloney

PATRICIA L. CARUSO et al.,

                    Defendants.

_____/

## **OPINION**

              This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983.

The Court has granted Plaintiff leave to proceed *in forma pauperis*.  Under the Prison Litigation

Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any

prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a

claim upon which relief can be granted, or seeks monetary relief from a defendant immune from

such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's

*pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's

allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504

U.S. 25, 33 (1992).  Applying these standards, Plaintiff's action will be dismissed for failure to state

a claim.

**Discussion**

I.      Factual allegations

Plaintiff Virgil Green, a/k/a Mu'eem A. Rashad, presently is incarcerated at the Lakeland Correctional Facility but complains of events that occurred at the Richard Handlon Correctional Facility (MTU). He sues Michigan Department of Corrections (MDOC) Director Patricia Caruso and the following MTU employees: Warden J. Prelesnik, Food Service Director M. Patrick, Food Service E-9 Leaders (unknown) Taylor, (unknown) Hansen and A. Cole, Librarian Yvonne Rose, Corrections Officers (unknown) Evert, (unknown) Sipka, (unknown) Boyle, (unknown) Beechum, (unknown) Christiansen, Assistant Resident Unit Supervisor (ARUS) (unknown) Larebell, Assistant Deputy Wardens (ADW) G. Ball and (unknown) Lake and Classification Director (unknown) Monroe.

Plaintiff is a member of the Orthodox Sunni Muslim faith. He claims that it is a sin to consume or handle pork meat. Plaintiff asserts that MTU food service staff allow servers to contaminate the non-pork foods with pork meat. Plaintiff argues that the non-pork food items are always placed next to the pork foods in the food line. The non-pork foods are then splattered with pork foods as servers rush the trays down the serving line and slide the trays through pork droppings on the counter. Plaintiff allegedly ate his meals with bits of pork in it on December 17, 2009 and February 1 and 8, 2010. After eating pork, Plaintiff became sick with stomach pains and diarrhea. On February 22, Plaintiff again ate a meal until he noticed small particles of pork in his food. Within an hour, Plaintiff began having severe stomach cramps, sweating and diarrhea. On March 5, Plaintiff encountered the same problem during his meal and later became ill. Plaintiff attempted to resolve the problem with Defendants Prelesnik, Patrick, Taylor, Hansen, Cole, Craig and Diaz

to no avail.[1] Plaintiff claims that Defendants Patrick, Taylor, Hansen and Cole violated his rights under the Free Exercise Clause, the Religious Land Use and Institutionalized Persons Act (RLUIPA) and state law by allowing his food to be contaminated with pork.

Several years ago, Plaintiff changed his commitment name, Virgil Ray Green, to Mu'eem Abdullah Rashad to reflect his religious beliefs. Plaintiff eventually received a new identification card with his Muslim name and commitment name on the front of the card. The MDOC later changed the format of the prisoner identification card so that the legal name of the prisoner was placed on the back of the identification card. Ever since the MDOC changed the identification cards, Plaintiff claims that MDOC officials have refused to recognize Plaintiff's Muslim name. Plaintiff has spent several years filing complaints against prison officials for refusing to call him by his Muslim name.

On January 4, 2010, Plaintiff complains that Librarian Rose refused to call him by his Muslim name. Plaintiff filed a grievance against Rose but she continued to harass Plaintiff by referring to his commitment name and by directing Officer Beechum to remove Plaintiff from the law library. On March 25 and April 5, Officer Beechum refused to allow Plaintiff access to the law library despite the fact that Plaintiff had a pass to go to the law library to work on his pending civil cases. On April 6, Defendant Beechum came to the law library and chanted "hey Virgil, hey Virgil." (Compl., Page ID #24, docket #1.) Plaintiff notes that Beechum also ripped up Plaintiff's grievances in front of him. Plaintiff argues that Defendants Rose and Beechum violated his rights under the Free Exercise Clause, the Petition Clause, Free Speech Clause, the Due Process Clause and RLUIPA. For filing grievances against Rose and Beechum, Plaintiff alleges that they retaliated

---

[1]Plaintiff did not list Craig and Diaz as Defendants in this action.

against him and conspired to retaliate against him by preventing him from accessing the law library on two occasions and by calling him by his commitment name.

Plaintiff alleges that he has had problems with other staff who refused to recognize his Muslim name. In the past, Plaintiff filed several complaints against Officer Evert and other prison officials for failing to refer to Plaintiff by his Muslim name. On February 1, 2010, Plaintiff alleges that Officer Evert repeatedly called Plaintiff by his commitment name over the intercom. When Plaintiff confronted Evert about his name, Evert stated "your name is Green [] and that's what [] I'm going to call you." (Compl., Page ID #28.) Plaintiff argues that Evert retaliated against Plaintiff by calling him by his commitment name. Plaintiff also claims that Defendant Evert violated Plaintiff's rights under the Free Exercise Clause and RLUIPA by refusing to recognize him by his Muslim name.

On March 7, 2010, Plaintiff complains that Officer Evert had Officer Christiansen confiscate Plaintiff's TV from another prisoner even though Plaintiff informed Evert that he owned the TV. Plaintiff complains that he did not receive a minor misconduct ticket for the TV so he did not receive a hearing. Plaintiff confronted ARUS Larabell about the wrongful confiscation of his TV on several occasions but Larabell would not assist Plaintiff. Plaintiff states that Defendants Evert, Christianson and Larabell knew that Plaintiff would not be able to replace his TV. Plaintiff claims that Defendants Evert, Christiansen and Larabell retaliated against Plaintiff and conspired to retaliate against Plaintiff by taking his TV for filing grievances against prison staff.

On February 15, 2010, Plaintiff went to the prison office for a pass. While at the office, Officers Sipka and Boyle refused to call Plaintiff by his Muslim name. Defendant Sipka stated "until [L]ansing changes the name on the front, Green is what I'm going to address you by."

(Compl., Page ID ##33,34, docket #1.)  Plaintiff argues that Officers Sipka and Boyle violated his rights under the Free Exercise Clause, the Due Process Clause and RLUIPA by refusing to call him by his Muslim name.

Plaintiff also complains about the lack of programming at MTU.  On one occasion, Plaintiff filed a grievance against the school principal for refusing to provide him with an opportunity to complete his recommended vocational trade program.  On May 7, 2010, Defendant Ball interviewed him and told him the program was no longer offered.  When Plaintiff complained, Defendant Ball said "[d]o you think by filing these grievances against my staff is going to help your case, when I am the one who has to review them?"  (Compl., Page ID #38.)  Plaintiff states that Defendant Ball entered into a conspiracy to retaliate against him for filing complaints against his staff.  Plaintiff also claims that Defendant Ball wrongly denied several of his grievances.

On May 17, 2010, Plaintiff learned that he was being transferred to Carson City Correctional Facility (DRF).  Plaintiff argues that he was transferred in retaliation for filing complaints against prison staff.  As a result of the transfer, Plaintiff lost his porter job.

Upon his initial classification meeting at DRF, Plaintiff learned that two errors were in his classification report: (a) a recommendation for a vocational trade program was missing, and (b) a recommendation for a drug outpatient treatment program was added although Plaintiff did not need that program.  Plaintiff claims that those errors affect his parole eligibility.  Plaintiff argues that Defendants Larabell, Ball, Lake and Monroe had access to his prison file.  Plaintiff asserts that his previous contact with Defendants Larabell and Ball regarding grievances brought about the unwarranted drug-programing obligation in his prison file.  Plaintiff alleges that Defendants Larabell, Ball, Lake and Monroe retaliated by changing his program recommendations for filing

complaints against "staff/officials at 'DRF'" and for filing grievances at MTU. (Compl., Page ID #40.)  In summary, Plaintiff argues that Defendants Larabell, Ball, Lake and Monroe violated his rights under the First and Fourteenth Amendments.

Plaintiff requests declaratory and injunctive relief as well as monetary damages.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."  *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    First Amendment - Free-Exercise Claim

Plaintiff claims that Defendants burdened his religious rights under the First Amendment, as applied to the states under the Fourteenth Amendment, by giving him pork on four occasions (February 1, 8 and 22 and March 5) and by refusing to call him by his Muslim name.

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," prisoners are entitled under the First and Fourteenth Amendments to a reasonable opportunity to exercise their religion. *O'Lone v. Shabazz*, 482 U.S. 342, 348-49 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must show: (1) that the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) ("sincerely held religious beliefs require accommodation by prison officials"). Prison officials may impinge on these constitutional rights only if the restriction "is reasonably related to legitimate

penological interests." *See Flagner*, 241 F.3d at 483 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

The reasonableness of a challenged regulation is determined under the deferential framework established in *Turner*, 482 U.S. 78, which recognizes the "'inordinately difficult undertaking'" of prison administration, which "'requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government.'" *Colvin*, 605 F.3d at 293 (quoting *Turner*, 492 U.S. at 85). *Turner* requires a court to consider four factors to determine reasonableness:

> First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it. If not, the regulation is unconstitutional, and the other factors do not matter. Unlike the first factor, the remaining factors are considerations that must be balanced together: (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimus cost to valid penological interests.

*Colvin v. Caruso*, 605 F.3d 282, 293-94 (6th Cir. 2010) (internal quotations omitted) (discussing *Turner*, 482 U.S. at 89-91). The *Turner* standard is not a "least restrictive alternative" test requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Turner*, 482 U.S. at 90-91. Instead, the issue is simply whether the policy or action is reasonably related to a legitimate penological interest. *Id.*

### 1. Food Diet

Plaintiff alleges that Defendants Patrick, Taylor, Hansen and Cole allowed his food to be contaminated with pork on four occasions in violation of his right to freely exercise his

religion. While food servers rush the trays down the serving line, Plaintiff claims that his non-pork food items are contaminated with pork food items.

The Richard Handlon Correctional Facility has the responsibility of serving hundreds of prisoners within a short period of time, which requires that trays be moved very quickly down the serving line and pork food items to be placed next to non-pork food items. Defendant's reliance on the current practice unquestionably is based on a legitimate penological interest. *Turner*, 482 U.S. at 90. The remaining *Turner* factors also do not weigh in Plaintiff's favor. Plaintiff makes no claim that his Muslim religion is not otherwise accommodated. Plaintiff obviously is given access to non-pork choices in his diet[2], and he does not complain that he is prevented from practicing the other tenets of his belief. He therefore has numerous alternatives for exercising his religious rights. *See id.* In contrast, accommodation of his food requests would have a significant impact on the resources of the prison. Requiring a server to slow down the serving line so that pork food items would not splatter into non-pork food items unquestionably would delay the prison's ability to serve meals within a reasonable time and would significantly increase the amount of time prisoners collectively are assembled, and, consequently, the amount of staff time to supervise prisoners in the dining hall. Finally, Plaintiff has not proposed that any other ready alternative available would fully accommodate the prisoner's rights at *de minimus* cost to valid penological interests. *See id.* at 90-91. In sum, Plaintiff fails to allege facts that would support a finding that Defendants Prelesnik, Patrick, Taylor, Hansen and Cole's practice of allowing prison food servers to rush a tray down the

---

[2]Under prison policy, prison menus are posted one week in advance, and prisoners are "permitted to abstain from foods that violate their religious tenets. Non-meat entrees shall be available." MICH. DEP'T OF CORR., Policy Directive 05.03.150, ¶ OO (effective Sept. 20, 2007).

serving line so that, on occasion, pork is splashed into the non-pork dishes was not reasonably related to a legitimate penological interest.

Further, to the extent that Plaintiff alleges that Defendants Prelesnik, Patrick, Taylor, Hansen and Cole inadequately supervised prisoner food service employees, he fails to state a claim against them. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Claims of inadequate supervision therefore are insufficient to support liability.

Although Plaintiff alleges that he has been deprived of his constitutional right to a pork-free diet, he does not allege that Defendants have a policy of refusing to provide such a pork-free diet nor have they intentionally interfered with his diet. Instead, he alleges only that isolated acts of negligence by prison food-line staff resulted in his food being contaminated with pork. It is well established that negligent conduct will not state a constitutional claim under § 1983. *See*

- 10 -

*Daniels v. Williams*, 474 U.S. 327, 330 (1986) (holding that the protections of the Due Process Clause of the constitution are not "triggered by a lack of due care by prison officials.") (citing *Estekke v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner . . . .") and *Baker v. McCollum*, 443 U.S. 137, 146 (1979) (holding that false imprisonment does not violate the Fourteenth Amendment simply because the defendant is a state official). Numerous courts have recognized that a prison official's isolated negligent interference with a prisoner's religious diet does not violate the constitution. *See Colvin*, 605 F.3d at 293-94 (holding that isolated negligence by prison officials in implementing kosher food requirements is not actionable under the First Amendment); *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (isolated acts of negligence in providing kosher diet do not support a free-exercise claim); *Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir. 2006) ("[Plaintiff] must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983.") (citing *Daniels*, 474 U.S. at 330).

In summary, Plaintiff fails to state a free exercise claim for the pork in his diet.

2. Name

Plaintiff claims that Defendants Rose, Beechum, Evert, Sipka and Boyle have refused to call him by his Muslim name although he changed his commitment name to Mu'eem A. Rashad. According to Michigan Department of Corrections (MDOC) Policy Directive 03.01.110, ¶A (effective Aug. 31, 1998), a prisoner may only change his or her name by court order. Assuming Plaintiff legally changed his name, then employees notified of the name change should refer to the prisoner by his or her legal name. *See id.* at ¶F. Failure of a prison employee to use a prisoner's

legal name, however, does not excuse a prisoner from disobeying a direct order when an employee uses the prisoner's commitment name. *Id.*

The Sixth Circuit has repeatedly found no merit in a prisoner's claim that "prison officials violated his First Amendment rights by refusing to use his religious name." *Spies v. Voinovich*, 173 F.3d 398, 406 (6th Cir. 1999); *Shuaib v. Stiddum*, No. 88-5227, 1988 WL 86126, at *1 (6th Cir. Aug. 18, 1988) ("the failure to refer to an inmate by a legally-adopted name simply is not violative of the [F]irst [A]mendment right to freedom of religion.") (citing *Akbar v. Canney*, 634 F.2d 339 (6th Cir. 1980)); *see also Porter v. Caruso*, 479 F.Supp.2d 687, 700 (W.D. Mich. 2007) (the Constitution does not guarantee a right "that prison officials will refer to him only by his chosen appellation.") In *Spies*, the prisoner claimed that prison officials violated his First Amendment rights by refusing to use his religious name. *Spies*, 173 F.3d at 406. The Court noted,

> We need not even analyze this claim in light of *Turner*, for it is established in this circuit that Spies has no
>
>> constitutional right to dictate how prison officials keep their prison records. As we see this issue, the present question of name change usage relates to prison administration. Absent unusual allegations such matters are for state prison officials to resolve. Intervention by the federal courts should only be in the very unusual case.

*Spies*, 173 F.3d at 406 (citing *Imam Ali Abdullah Akbar v. Canney*, 634 F.2d 339, 340 (6th Cir. 1980)). Because the Constitution does not guarantee that prison officials will refer to him by his chosen Muslim name, Plaintiff's allegations fail to state a First Amendment claim.

### B.    RLUIPA

Plaintiff alleges that Defendants violated RLUIPA, 42 U.S.C. § 2000cc, when they negligently fed him pork-contaminated food items. The RLUIPA statute provides, in relevant part, that

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). Plaintiff seeks monetary damages, declaratory judgment and injunctive relief, but none of these forms of relief are available to him.

Although the RLUIPA permits the recovery of "appropriate relief against a government," 42 U.S.C. § 2000cc-2(a), the Sixth Circuit has held that monetary damages are not available under RLUIPA. *See Colvin*, 605 F.3d at 289 (citing *Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) ("[T]he Eleventh Amendment bars plaintiff's claim for monetary relief under RLUIPA."). Moreover, Plaintiff's requests for declaratory and injunctive relief are moot because Plaintiff has been transferred from MTU to DRF. Plaintiff specifically challenged only the food-service practices at MTU, not the policy of the MDOC as a whole. *See Colvin*, 605 F.3d at 289 (finding challenge to the kosher-meal program moot because the prisoner attacked only the policy at one prison, not the overall MDOC kosher-meal policy) (citing *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)). Accordingly, Plaintiff's RLUIPA claim fails to state a claim.

### C.     First Amendment - Access to the Courts

Plaintiff argues that Defendant Beechum violated his right to access the courts when he denied him entrance to the law library on two occasions. Plaintiff wanted access to the law library to work on his pending civil cases. It is well established that prisoners have a constitutional right of access to the courts under the First and Fourteenth Amendments. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The right of access to the courts has never been equated with the access of legal materials at the prison library. *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985); *see also Lewis v. Casey*, 518 U.S. 343, 351 (1996) (a sub-par library or legal assistance program does not establish relevant actual injury). In *Bounds*, 430 U.S. 817, the Supreme Court recognized a prisoner's fundamental right of access to the courts. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively. *Lewis*, 518 U.S. 343. Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance. *Id.* at 351 (1996). Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards. *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. Mar. 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. Mar. 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker*, 771 F.2d at 932. An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994); *see also Dellis*, 257 F.3d at 511 (citing *Lewis*, 518

U.S. at 351 (inmate must demonstrate actual injury to pending or contemplated litigation)).  Plaintiff has not stated that his pending civil actions were injured in anyway from being unable to enter the law library on two occasions.  Therefore, Plaintiff fails to state an access-to-the-courts claim.

### D.    First Amendment - Retaliation

Plaintiff argues that he was subjected to retaliation against for filing grievances and complaints against MTU staff.  Plaintiff claims that (1) Defendants Rose, Beechum and Evert retaliated by referring to Plaintiff by his commitment name, (2) Defendant Beechum retaliated by removing Plaintiff from the law library on two occasions,  (3) Defendant Evert retaliated by having Defendant Christiansen confiscate Plaintiff's TV, (4) Defendant Larabell retaliated by refusing to assist Plaintiff when Defendant Christiansen confiscated his TV, (5) Defendants retaliated by transferring Plaintiff to DRF, (6) Defendants Larabell, Ball, Lake and Monroe retaliated by changing the program recommendations in Plaintiff's classification file, and (7) Defendant Ball retaliated by wrongly denying Plaintiff's grievances.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Thaddeus-X*, 175 F.3d at 394.  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Filing a grievance is constitutionally protected conduct under the First Amendment. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). Plaintiff alleges that he filed several grievances against a variety of prison staff including Defendants Rose and Beechum. The Court therefore will assume that Plaintiff has adequately alleged the first element of a retaliation claim.

## 1. Adverse Action

Plaintiff cannot demonstrate that the failure to use his Muslim name, the refusal to allow him access to the law library on two occasions, the transfer of Plaintiff to DRF, the denial of his grievances and the confiscation of his television were sufficiently adverse. The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness;" the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). However, certain deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *See, e.g., Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542-43 (6th Cir. 2003) (threat to change drug test results).

Plaintiff's claim of retaliation based on Defendants Rose, Beechum, Evert, Sipka and Boyle's refusal to call him by his Muslim name does not rise to the level of a constitutional violation. Plaintiff's claim is merely verbal harassment. *See Carney v. Craven*, 40 F. App'x 48, 50 (6th Cir. 2002) ("Even if the grievance was not frivolous, [plaintiff] did not state a claim for retaliation in the form of verbal harassment. An inmate has no right to be free from verbal abuse, and minor threats do not rise to the level of a constitutional violation.") (internal and external citations omitted).

Defendant Beechum's denial of access to the law library on two occasions also is not sufficiently adverse to deter a reasonable person from engaging in protected conduct. *See Thaddeus-X*, 175 F.3d at 394; *see also James v. Jondreau et al.*, No. 2:07-cv-235, 2009 WL 1789076, at *5 (W.D. Mich. June 23, 2009) (denying access to the law library on one occasion was not sufficiently adverse).

Moreover, Plaintiff cannot show his transfer to DRF was an adverse action taken against him for filing grievances against MTU staff. "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005);); *see also Yarrow*, 78 F. App'x. at 543 ("transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal quotation marks omitted), *but see Hill*, 630 F.3d at 473-75 (holding that, while a transfer ordinarily does not constitute adverse action, a transfer to administrative segregation or another prison's lock-down unit can be sufficient to constitute adverse action). The *Hill* court held that transfer to a lock-down unit at another facility is more than just a transfer, and is more akin to the transfer in *Siggers-El*, 412 F.3d at 701-02, in which the consequence of transfer would affect the prisoner's ability to pay his lawyer, thereby affecting his access to the courts. Similarly, the Sixth Circuit has held that a transfer to segregation or to an area of the prison used to house mentally disturbed inmates could be sufficiently adverse. *See Thaddeus-X*, 175 F.3d at 398.

Plaintiff's transfer was from one level II facility to another facility that houses level I, II and IV prisoners. Plaintiff does not allege that he was transferred to a different security level,

to segregation or to an area of DRF that houses mentally disturbed inmates. *See Thaddeus-X*, 175 F.3d at 398; *Hill*, 630 F.3d at 473-75. Moreover, Plaintiff does not allege that the transfer inhibited his ability to access the courts. *See Sigger-El*, 412 F.3d at 702. Plaintiff therefore has no constitutional claim arising from his transfer to DRF.

Further, Defendant Ball's denial of Plaintiff's grievances was not sufficiently adverse to support a retaliation claim. Plaintiff could still appeal the denial of his grievance through the three-step grievance process. If administrative remedies were otherwise unavailable, then he could still file a lawsuit. *See Burgos v. Canino*, 358 F. App'x 302, 306-07 (3rd Cir. 2009) (delaying or denying a grievance does not amount to adverse action).

Finally, Plaintiff's claim that Defendants Evert, Christiansen and Larabell retaliated by confiscating his television from another prisoner is not sufficiently adverse to deter a reasonable person from engaging in protected conduct. Confiscating Plaintiff's property from another prisoner was entirely reasonable under MDOC policy. Plaintiff even alleged in his complaint that he expected to receive a minor misconduct ticket for loaning his television to another prisoner. Because the confiscation of Plaintiff's TV from another prisoner was warranted under MDOC policy, Plaintiff fails to allege that Defendants Evert, Christiansen and Larabell's actions were sufficiently adverse.

In summary, Plaintiff's claims of retaliation for failing to use his Muslim name, for refusing to allow him access to the law library on two occasions, for transferring Plaintiff to DRF, for denying his grievances and for confiscating his television from another prisoner fail to satisfy the adverseness element of a retaliation claim.

2. <u>Causation</u>

Plaintiff claims that Defendants Larabell, Ball, Lake and Monroe retaliated by changing the program recommendations in Plaintiff's classification file because Plaintiff filed grievances and complaints against DRF prison staff and MTU prison staff. (Compl., Page ID #40.) Plaintiff, however, does not provide any factual allegations regarding the grievances or complaints such as who they were against or when they were filed. Plaintiff's allegations as to causation are wholly conclusory. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Although in certain circumstances temporal proximity may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Moreover, Plaintiff was transferred from MTU to DRF so any complaints or grievances filed on DRF officials would have been filed <u>after</u> Plaintiff was transferred. As a result,

the MTU Defendants Larabell, Ball, Lake and Monroe could not have retaliated against Plaintiff for grievances filed on DRF staff.

Finally, Plaintiff claims that Defendants Larabell, Ball, Lake and Monroe had access to his prison file. Plaintiff, however, does not allege that those Defendants had the ability to change his program recommendations in his classification report. A defendant's statements or conduct are not evidence of retaliation if the defendant is not the decisionmaker taking the alleged adverse action. *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001); *Shehee*, 199 F.3d at 301. Absent such allegations, the mere fact that his program recommendations had changed falls far short of demonstrating that the named MTU Defendants engaged in retaliation. Such allegations "permit the court to infer [no] more than the mere possibility of misconduct," not that misconduct is "plausible." *Iqbal*, 129 S. Ct. at 1950. Accordingly, Plaintiff's speculative allegations fail to state a retaliation claim for the program recommendation changes in his classification file.

### E.     First Amendment - Right to Petition Government

Plaintiff alleges that he was deprived of his First Amendment right to petition government for a redress of grievances when Defendant Ball improperly rejected his grievance and Defendant Beechum destroyed his grievances.

The Sixth Circuit has indicated that the filing of grievances is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *Shehee*, 199 F.3d at 300-301. However, a prisoner has no constitutional right to an effective grievance procedures or access to any such procedure voluntarily established by the state. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991); *Miller v. Haines*, No. 97-3416, 1998 WL476247, at *1 (6th Cir. Aug. 3, 1998).

Even if Defendant Ball's rejection of the Plaintiff's grievances were erroneous, Plaintiff has suffered no constitutional injury. *See Lyle v. Stahl*, No. 97-2007, 1998 WL 476189, at *1 (6th Cir. Aug. 3, 1998) (prisoner's allegation that grievance was improperly rejected does not present a deprivation of any federal fight, as there is no inherent constitutional right to an effective prison grievance procedure). In addition, even if Plaintiff had been improperly prevented from filing a grievance by Defendant Beechum ripping up his grievances, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file an institutional grievances. *See, e.g.*, *Lewis*, 518 U.S. 343; *Bounds*, 430 U.S. at 821-24. The exhaustion requirement only mandates exhaustion of available administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff was improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. In light of the foregoing, the Court finds that Plaintiff fails to state a claim against Defendant Ball for rejecting his grievances and Defendant Beechum for destroying his grievances.

### F.      First Amendment - Free Speech

Plaintiff alleges that Defendants Rose and Beechum violated his rights under the Free Speech Clause. While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555. Plaintiff has not provided any allegations regarding how Defendants Rose and Beechum violated his rights under the Free Speech Clause. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 129 S. Ct. at 1949-50; *Twombly*, 550 U.S. at 555. Plaintiff therefore fails to state a claim for violations of his rights under the Free Speech Clause.

### G.    Due Process

Plaintiff argues that Defendants Rose, Beechum, Evert, Christiansen, Larabell, Sipka and Boyle violated his due process rights by failing to refer to him by his Muslim name.  Plaintiff also claims that Defendants Larabell, Ball, Lake and Monroe violated his due process rights by changing his program recommendations in his classification report before he was transferred to DRF.  Reading Plaintiff's *pro se* complaint indulgently, *see Haines*, 404 U.S. at 520, Plaintiff fails to state an actionable due-process claim.

In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law.  "[T]he deprivation by state action of a constitutionally protected interest in "life, liberty or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*."  *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original).

### 1.    Muslim Name

Plaintiff claims that Defendants Rose, Beechum, Evert, Christiansen, Larabell, Sipka and Boyle violated his due process rights by refusing to call him by his Muslim name.  Plaintiff's allegations, however, do not implicate a protected interest in life, liberty or property.  *See Porter*, 479 F.Supp.2d at 700 (the Constitution does not guarantee a right "that prison officials will refer to him only by his chosen appellation.").  "Without a protected liberty or property interest, there can be no federal procedural due process claim."  *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).  Plaintiff therefore fails to state a due-process claim for Defendants' refusal to call him by his Muslim name.

## 2. Classification Report

Plaintiff argues that Defendants Larabell, Ball, Lake and Monroe violated his due process rights by changing his classification report to remove a recommendation for an education program and to add a recommendation for a drug outpatient treatment program. "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc.*, 503 F.3d at 519 (citation omitted). Contrary to his assertions, Plaintiff does not have a federally cognizable liberty interest in participating in an education program or having a drug rehabilitation program removed from his classification report. Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs based on the Fourteenth Amendment. *See, e.g., Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services). Because Plaintiff has no liberty interest in an education program or to remove a rehabilitative program from his classification report, he was not entitled to a hearing before

Defendants Larabell, Ball, Lake or Monroe changed his classification report. He therefore fails to state a due process claim against Defendants Larabell, Ball, Lake and Monroe.

### 3.    Confiscation of TV

Plaintiff claims that Officer Christiansen wrongly confiscated his TV. Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels*, 474 U.S. 327. Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized negligent acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Nov. 15, 2004). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; Policy

- 24 -

Directive, 04.07.112, ¶ B. Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's fails to state a due process claim for the confiscation of his TV.

### H. Conspiracy

Plaintiff alleges that Defendants engaged in a conspiracy to retaliate against him. To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 0F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102,106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996). A plaintiff's allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to commit an act depriving plaintiff of a federal right. *Lepley v. Dresser*, 681 F.Supp. 418, 422 (W.D. Mich. 1988). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1196 WL 43541, at *3 (6th Cir. Feb. 1, 1996). A simple allegation that defendants conspired to cover up wrongful actions is too

conclusory and too speculative to state a claim of conspiracy. *Birrell v. State of Mich.,* No. 94-2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995). Plaintiff's conspiracy claims are too speculative, and, thus, fail to state a claim.

## I. State Law

To the extent that Plaintiff's complaint presents allegations that Defendants' actions violated state law or policy, this Court declines to exercise jurisdiction. Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). The Sixth Circuit has stated that, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and where all federal claims are dismissed prior to trial, the court ordinarily should dismiss the state-law claim without reaching its merits. *See Landefeld v. Marion Gen. Hosp.*, *Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993); *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)). This claim will be dismissed without prejudice.

## J. Pending Motion

Plaintiff filed a motion to serve the complaint (docket #3) on September 29, 2010. Because the Court is dismissing Plaintiff's action for failure to state a claim, Plaintiff's motion will be denied as moot.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment and Order consistent with this Opinion will be entered.


Dated:   __March 24, 2011__                    /s/ Paul L. Maloney_____
                                               Paul L. Maloney
                                               Chief United States District Judge